United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning again, everyone. This is Judge Wilson, and I'm in Tampa. And Judge Marcus is in Miami. And Judge Marcus and I are delighted to have Judge Thapar with us, visiting from the 6th Circuit. Judge Thapar has been with us all week, and Judge, we appreciate your assisting us in deciding these appeals this week. Thank you very much. Thank you for having me. Now, Mr. Maycock advises me that counsel are present and they're ready to proceed. We have two appeals that are scheduled for oral argument this morning. As you know, Ms. Tisa is our courtroom deputy, and she'll keep time for us. And she'll let us know when there are two minutes left to argue, and she will also let us know when counsel's time is up. I would advise counsel that the panel has not previously conferred about these appeals, but we've read the briefs and we've examined relevant parts of the record, if that will assist you in confining your arguments to the issues on appeal. So we'll begin with our argument in the first case. It's United States of America v. McGregor. Gail Stage is here for the appellant from the Federal Public Defender's Office, and Philip DeRosa is here for the United States. And, Ms. Stage, you may begin with your argument. Thank you, Your Honors. May it please the Court, I'm Assistant Federal Public Defender Gail Stage. I'm here on behalf of Mr. McGregor. And I want to start off with sort of a classic quote that we've all heard, and that is that this case is an example of the tail wagging the dog. In this case, the district court permitted the government to admit evidence of what the government called a very distinct-looking gun. It was a Glock. It had a clear extended magazine that was filled with hollow-point bullets. The gun was brought into court. The gun was shown to the jury. The gun was passed around to the jury. And during closing, the government waved the gun in front of the jury. This gun was so important to the government's case that it mentioned the gun 14 times during closing. And only one of those times did the government talk about the fact that the gun may have been used to protect some sort of valuable goods. The defendant, the co-defendant in this case, who claimed that the gun was also evidence that all of the personal identifiable information found in this case, he wanted to argue that the handgun showed that my client, Mr. McGregor, was the possessor of all of the identifying information, and he wanted to show that the handgun was evidence. This is Judge Wilson. So he was on trial for identity theft, right? That's correct, Your Honor. Wasn't there testimony at the trial that those who engage in identity theft typically have guns to protect the valuable information? And if so, wouldn't that make that evidence, the gun, the use of the gun, wouldn't that make that relevant? The answer is no for several reasons, Your Honor. First of all, the government never brought in that kind of argument until Mr. McGregor decided to plead guilty to possessing the gun. Other than that, the government thought that evidence of the gun was going to come in because count one of the indictments charged Mr. McGregor with being a felon in possession. First day of trial, he came in, he pled guilty to that crime and argued that as a result of that plea, the gun was no longer relevant. It was at that time that the government started to claim, well, guns are, quote, commonly carried by people committing ID theft. And they brought in a gentleman, Detective Seeley, who we do concede at oral argument, Your Honors, was brought in as an expert. He wasn't qualified at trial as an expert, which made it a little confusing as to whether or not he testified as an expert. For purposes of this argument, we concede that he did testify as an expert. It's interesting that he is literally the only person I could find in the United States that has testified during a trial that, quote, guns and fraud always go together. Was there any objection to that testimony? Yes, Your Honor. There was an objection at several points. There were objections at the very beginning when the government argued that despite the... This is Judge DeParle. You're not appealing any of that, correct? So you're not saying the district court erred in overruling those objections? Yes, Your Honor. Well, we're arguing, yes, that the government clearly abused its discretion when it refused to keep out the evidence of the gun. So your argument below, correct me if I'm wrong, seemed to be a 401, 403 argument. Now it seems to be a 404B argument. That wasn't raised below the 404B, correct? The 404B argument was initially raised by the government in a pleading, and the government wanted to get evidence of the gun. I'm sorry. I should have been clearer. Your client never objected below in the trial on 404B grounds, correct? That's correct, Your Honor, because the issue of 404B essentially went away when the government, when my client, excuse me, pled guilty to being a felon in possession. This is your brief on appeal. I'm sorry to interrupt you, counsel, but the way I read your brief, your initial brief, and the government then said you forfeited it by not raising it below in front of the trial court, the 404B argument, and then your reply brief addressed the 404B, but never addressed the forfeiture. So can you just explain to me, do you think you forfeited it by not raising the 404B below? Your Honor, in the context of whether or not the government was trying to get this evidence, to prove motive or intent or knowledge, we did not argue that it was not relevant for those purposes. It was argued below, after the plea was then... So is it forfeited, counsel? I'm sorry to interrupt you. No, that's all right. I understand. You're looking for a direct answer, Your Honor. And the answer, the very short answer would be yes, it would be forfeited if it had been properly argued. But the 404B issue sort of went away and wasn't necessary after Mr. McGregor pled guilty to possessing the gun. The notice of the 404B related strictly to his past criminal convictions, his past possession of guns. So now the government... Counsel, in that regard, the 404B went away. So then the government, is the government accurate in their brief in saying they never introduced evidence of the gun being illegal or him being a prohibited person? That is true. That did not come out during the trial, Your Honor. So if it was a distinctive knife sitting next to the sheet with his initials in it or something like that, a dagger, for example, would it be error for the government to introduce that to show that it was found in a closet with the piece of paper with the personal identifiers? Yes, it would, Your Honor. If it was solely used... What if it was a chess piece with his initials? Well, that is unlikely, Your Honor, to enslave the jury, to incite the jury to make a decision of guilt or innocence based upon its emotion or based upon its belief that Mr. McGregor was a bad person. And if I could just let... Whether it's unduly prejudicial, right? Not its relevance. So do you concede any of those would be relevant? I concede, Your Honor, that there may be some relevance to proving up the defendant's possession of, for instance, in this case, a piece of paper with personally identifiable information. But you rarely have, as we had in this case, the piece of paper with Mr. McGregor's fingerprint on it. Ms. Stace, this is Judge Marcus. Didn't you argue that the PII information did not belong to your client but rather to the co-defendant? And didn't the co-defendant argue that the PII information, at least found in the closet, belonged to you? Yes, Your Honor. Those were the arguments made below. Well, that being the case, why wasn't it exceedingly relevant for the government to establish that the PII information belonged to you by showing the juxtaposition of the firearm and the PII information together in the closet? Doesn't that leave a jury to infer? They need not. But wouldn't that advance the argument that the PII information belonged to your client rather than the co-defendant? Counsel, two minutes. Two minutes, Counsel. Thank you, Ms. Tisa. In this particular case, the government clearly believed that it needed the evidence of the gun. I'm sorry. My phone is... My personal timer just went off. In this case, the government believed that it needed the gun. It refused to allow Mr. McGregor to stipulate that the gun belonged to him. The government wanted to bring in the gun. It wanted to show the gun to the jury. It wanted to talk about the gun, which it did, as I said, 14 times during closing. So, in this particular case, the government didn't believe that it had enough evidence. I'm sorry to interrupt you, but I'm simply asking about the powerful relevance of showing the gun, which plainly belonged to your client, and the PII information being situated together in the closet. Wasn't that a substantial piece of evidence that afforded the inference that the PII information belonged to your client rather than the co-defendant? No, Your Honor. It's not enough. In this particular case... It's not enough to establish... There was ample evidence... I'm sorry? Hello? You can proceed. We're still on the line. I'm sorry. Your Honor, in this particular case, there was ample evidence to show... Not enough to get through a harmless error analysis, but there was ample evidence enough to show that Mr. McGregor could have possessed that PII. There were Snapchat pictures of him. There was his fingerprint on a credit card found in his bedroom. There was also his fingerprint found... At this stage, bear with me just for a moment. Yes. I do not dispute that there were other indicia of possession of the PII information. I'm simply asking whether or not this wasn't a powerful piece of evidence establishing possession. Sometimes evidence can be so powerful, to use your word, Judge Marcus... So your time has expired, counsel. No, but you can answer my question, Ms. Stage. Thank you. That it is enough to incite a jury to make a decision based on its emotion or its belief that a defendant needs to be punished, as in old chief, or needs... may be guilty of something else, which is what the Supreme Court said in old chief. And we contend that in this particular case, that is what the government wanted to use evidence of this distinctive, scary-looking gun for. I reserve the rest of my time, your honor, for rebuttal. Thank you. Thank you very much. All right. Thank you, counsel. We'll hear from Mr. DeRosa on behalf of the government. Good morning. May it please the court, Philip DeRosa on behalf of the United States. Your honor, this was not offered as 404B evidence by the government, and that's in docket entry 68. We offered it as, if you will, the res gestae of the case. It was inextricably intertwined. Our 404B argument was an alternative argument, but it never proceeded that far because the judge let it in as direct evidence, if you will, and the 404B argument, as Ms. Stage said, went away. So it came in for two reasons. The same two reasons that I argued on appeal are the same two reasons that the government proffered the evidence and introduced it, because one, it tied the defendant to the PII in the closet. And of course, that's one of the reasons that this court let it in in Delva, which was cited on page two of the defendant's reply brief. You determined that the sufficiency of the evidence of the defendant's possession of PII was because a firearm was found amidst evidence of fraud. Same reason that we put it in in this case. And the second reason was because it was relevant to show the defendant's intent to defraud because, as our expert said, firearms are commonly carried by individuals who possess contraband PII due to its value. And that expert was noticed in docket entry 67. Yes, sir. This is Judge Separ. I just have a quick question on the second point, which is I'm familiar, and there's a lot of cases talking about guns and drugs and experts that talk about guns and drugs. I haven't seen any, and maybe you can tell me, are there any cases that talk about guns being particularly prevalent with fraud crimes? No, sir. I haven't seen any. And it was interesting in Delva, this very same expert testified, Detective Seeley testified in Delva, but he didn't testify about his opinion on whether guns and fraud go together. And nobody asked him about it. So you're right. I haven't seen it. And, you know, I'm certainly not here on that. Mr. DeRosa, this is Judge Marcus. Let me stop you on that point. I, too, was unable to find any case that had ever said that guns are like the tools of the trade and are associated with fraud, as opposed to guns being the tools of the trade in the narcotics business, of which there are many, many cases all over, including in our circuit. This would be, then, the first time that any court had ever ruled that way, would it not? Well, I disagree with your premise, Your Honor. And this goes to this whole slippery slope argument, which I know is kind of meant to scare you. But this is not the same kind of case as the drug cases where you found that a firearm's presence without more is circumstantially relevant to the defendant's knowledge, because you didn't have an expert in that case. You said it's uniformly recognized that weapons are often as much tools of the trade as the most commonly recognized narcotics paraphernalia, with nothing to support that. No co-conspirator testimony, no expert testimony. We're not asking you to do that. We had an expert here, and he was noticed as an expert well before the defendant pleaded guilty. Document entry 67. He was qualified as an expert. He was accepted as an expert by the defense. They didn't challenge his qualifications. They argued only that the jury didn't need expert testimony in this case. But he testified that based on his participation in over 400 fraud investigations, that frequently, often, he said, there are guns present with PII. Now, our position, and we submit that that opinion is more than enough to develop, to support that premise. It's one man's opinion. It's one expert's opinion. I don't know that a consensus has developed around that. So that's why we're not asking you to make the same kind of ruling you did in Terzado Madrugo. What we're asking you to do is to say, based on this expert's testimony, it's relevant and probative as to the intent to defraud. And that's just one of the two reasons that we introduced the firearm. So just on that one element, probative value, relevance to intent to defraud, we're asking you to depend on the expert's testimony. Not to develop a Terzado Madrugo uniformly recognized standard. Mr. DeRosa, this is Judge Wilson. Let's assume that the evidence is relevant. But the court still can exclude it if its probative value is outweighed by its prejudicial value. And so counsel mentioned that the gun was waived before the jury and mentioned 14 times during closing argument. Why isn't the prejudicial value of this evidence outweighed by its probative value, assuming that it's relevant? The court should exclude it if it's used to inflame the jury, even if it's relevant. Isn't that right? That's absolutely correct, Your Honor. I saw it, obviously, I saw the closing... Were you the trial lawyer? I was not. I was not, Your Honor. But I read the closing argument. He wasn't charged with possession of the gun. He was charged with access identity fraud. Well, he was charged... Your Honor, he was charged originally with possession of a firearm or convicted felon. But he pled guilty to that on the day of trial. Sure, yeah. He pled guilty to that. But it seems like he was tried, when you look at the evidence, for possession of the gun. And if the evidence inflames the jury, shouldn't the court have excluded it because its prejudicial value outweighed its relevance? I disagree with your premise, Your Honor. I thought the government used the firearm during closing argument in a very measured way. The prosecutor told the jury that there was no evidence that the firearm was possessed illegally. And the government argued that the firearm was not being used to make the defendant look bad, but to prove that the PII belonged to him and that his intent to use the PII to defraud was reflected by the fact that the defendant knew that it was valuable enough to protect with a firearm. So I disagree that... I didn't count the number of times the prosecutor said gun, but my reading of the closing argument was that the government used the firearm in a very measured way. Now, it's easy from this stage to stand up after the fact and in hindsight say, well, the government had ample evidence and it easily proved the case without the gun. But, you know, we don't know ahead of time what defense they're going to put on, if any, or what they're going to argue. So for that reason, we don't use normally defense attorneys as our measure of what quantum of evidence to prove our case with. Now, he wanted to stipulate his way out of the strength of the government's evidence by saying that I'm willing to stipulate that the gun in the Snapchat photo is mine, but it's not clear at all that that stipulation offer extended to the gun in the closet, because the gun in the closet didn't have any fingerprints on it. So this is what he said during his closing argument, that the gun had nothing to do with the fraud, that Detective Ortiz lied when he said that the sheet of PII in the closet was found with the gun, multiple other people were in and out of the residence who touched the PII, so fingerprints don't tell the full story, and all of the PII belonged to the co-defendant. So this is what we're faced with. So when they tell us, well, you didn't really need it, we tend to make our own decision on that, and we think we made the right one in this case. Your Honors, if you don't have any more questions for the government, then I've said my piece. Thank you very much. All right, thank you, Counsel. And Ms. Stage, you reserve some time for rebuttal. Yes, Your Honor, I reserve five minutes. Thank you very much. Gail Stage again for Mr. McGregor. First of all, taking the evidence of the gun piece by piece, let's talk about the picture, the picture of the gun on Snapchat. There was certainly no need for that picture when Mr. McGregor offered to the government to stipulate that the gun belonged to him. If we talk about Delva and why the court found in Delva that the gun was relevant to fraud, in that case you had $29,000 worth of cash in the townhome that the defendants were found in. You had a defendant admit, confess that the gun that was found out in the open was used to protect the proceeds of fraud. In this case, the government made very, very clear, and it repeatedly said again in closing, this is not a use case. This is a mere possession case. We're not talking about shopping sprees. There's no need to protect valuables. We're not talking about bank accounts. There's no need to protect that kind of information. And we're not talking about credit cards. We're just talking about merely possessing PII. The government says that somehow Mr. McGregor waived this argument by making his arguments in closing that he didn't possess the PII. That was the whole point of the case. The problem is that when the gun was admitted into evidence and when it was described repeatedly by the government as a distinctive gun, a Glock with hollow points, and the jury was allowed to handle this gun, it made the trial more about the gun, the tail wagging the dog, than it did about who actually possessed the personal identifiable information. Ms. Page, this is Judge Marcus. I just have a fact question about the record. Mr. DeRosa made reference to what was and was not stipulated to by the defendant. There was the picture of the firearm, and there was the firearm itself. What stipulation was the defendant willing to make? The defendant, and the record shows it in docket entry number 152, Your Honor, on page 20. It merely says that defense counsel says, we were willing to stipulate that the gun belonged to him, meaning Mr. McGregor. It doesn't say whether or not that stipulation was in any way limited to the picture of the gun. Another fact about Delva was also that the gun was very easily accessible. It was leaning up against a wall. And in this case, you had a gun inside of a closet, inside of a box, next to a piece of paper that had the defendant's fingerprint on it, which clearly showed that the defendant had handled that piece of paper. The entire case against the co-defendant was the fingerprints, and that is what they used to establish that the co-defendant was guilty. His fingerprints were all over the PII. The government could have been satisfied with arguing that in this particular case, with the addition that it had pictures of Mr. McGregor's Snapchat account in which there were photographs of some PII. Again, the only reason that the government needed the gun in this case was because overall, when you weigh the evidence between the two defendants, the evidence was weaker regarding the PII against Mr. McGregor. And for those reasons, Your Honor, we're asking this court to rule that the district court abused its discretion, that evidence of the gun was more prejudicial than probative, and to reverse the trial court's decision and to send this case back for a new trial and excluding any evidence of the gun. Thank you so much. All right. Thank you, Ms. Stage and Mr. DeRosa.